# In the United States Court of Federal Claims

No. 22-584L

(Filed: January 31, 2023)

|  |  |
|---|---|
| **JAMES P. JOHNSON and RADEANA L. JOHNSON,** | ) ) ) ) |
| *Plaintiffs,* | ) ) ) |
| v. | ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*James P. Johnson*, Zenia, CA, *pro se*.  *Radeana L. Johnson*, Zenia, CA, *pro se*.

*Peter W. Brocker*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

### ORDER

***SOLOMSON*, Judge.**

Property owners filed a claim against the government, asserting that they are entitled to compensation for property damage resulting from a wildfire. The government filed a motion to dismiss for failure to state a claim upon which relief may be granted. For the reasons explained below, the Court grants the government's motion.

**I.     PROCEDURAL HISTORY**

On May 25, 2022, Plaintiffs James P. Johnson and Radeana L. Johnson (collectively, "Plaintiffs" or "the Johnsons"), acting *pro se*, filed a complaint against Defendant, the United States, in this Court. ECF No. 1. On July 15, 2022, the government filed a motion for a more definite statement, ECF No. 6, which the Court granted on July 21, 2022, ECF No. 7. In granting the government's motion, this Court instructed that "Plaintiffs shall file an amended complaint identifying . . . the particular government action(s) that allegedly led to the taking of their property." ECF No. 7 at 2.

On July 28, 2022, the Court issued an order temporarily staying this case and requesting "Plaintiffs' consent to the Court's referral of this case to the Pro Bono/ Attorney Referral Pilot Program of the U.S. Court of Federal Claims Bar Association . . . for the potential representation of Plaintiffs by pro bono counsel." ECF No. 8 at 1–2. The Court explained that "even if the Bar Association is able to identify possible counsel to represent Plaintiffs in this matter, Plaintiffs are not obligated to engage any particular attorney." *Id.*

On August 15, 2022, Plaintiffs filed a notice with the Court indicating that they "do NOT consent to the Court[']s referral of this case" for pro bono representation. ECF No. 11. On that same date, Plaintiffs filed an amended complaint alleging that the government's actions amounted to a taking of Plaintiffs' personal and real property requiring just compensation pursuant to the Fifth Amendment of the United States Constitution. ECF No. 9 ("Am. Compl.") at 6. Plaintiffs' amended complaint also alleges that the original land grant from the United States is an "expressed [sic] contract" with the government. Am. Compl. at 2.

On September 16, 2022, the United States filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted. ECF No. 13 ("Def. Mot."). On October 17, 2022, Plaintiffs filed a response, opposing the government's motion. ECF No. 14 ("Pl. Resp.").[1] On October 31, 2022, the United States filed a memorandum in reply in support of its motion to dismiss. ECF No. 16 ("Def. Rep.").

## II.   FACTUAL BACKGROUND[2]

Plaintiffs have owned a particular parcel of California land since 1998. Am. Compl. at 9–10 (Exhibits A-3, A-4); Def. Mot. at 2. This parcel is surrounded by the Six

---

[1] On the same day Plaintiffs filed their response to the government's motion, Plaintiffs also filed a motion requesting judicial notice. ECF No. 15. In particular, Plaintiffs asked this Court to take notice of Article VI, Section 2 of the United States Constitution. *Id.* at 1. Plaintiffs further assert that the original land grant from the United States government is an "expressed [sic] contract" with the government and "treaty law" under the Homestead Act of 1862. *Id.* at 1–3 (emphasis omitted). The United States Constitution is, of course, the supreme law of the land, and this Court is duty bound to uphold it. *In re Bailey*, 182 F.3d 860, 867 (Fed. Cir. 1999) ("[F]ederal courts have a duty to uphold the Constitution, as the Constitution is the supreme law of the land." (citing U.S. Const. art. VI, § 2)). To the extent Plaintiffs are trying to demonstrate that they own the property at issue, the Court assumes that is the case, at least for the purposes of resolving the government's pending motion to dismiss.

[2] As previously noted, for the purposes of resolving the government's motion to dismiss, the Court assumes that all nonconclusory factual allegations pled in the amended complaint — but

2

Rivers National Forest in Northern California. Am. Compl. at 3–5, 11 (referring to the property at issue as a "private inholding"). Plaintiffs allege that, in early September 2020, the United States Forest Service ("Forest Service") was involved in efforts to control or manage a specific wildfire (the August Complex Fire) within that national forest. Am. Compl. at 3. On or about September 8, 2020, the wildfire spread from the national forest to Plaintiffs' land, damaging Plaintiffs' property. *Id.*; *see also* Def. Mot. at 2.

Plaintiffs essentially allege that the Forest Service's mismanagement of the wildfire caused the fire to spread to, and thus damage, Plaintiffs' property. In particular, the Johnsons allege the Forest Service "deliberately acted to engage in" the fire within the national forest but "deferred full suppression strategies" in that area. Am. Compl. at 3 (emphasis omitted). Plaintiffs specifically refer to the Forest Service's "Incident Action Plans [from] September 5, 2020[,] through September 8, 2020." *Id.* Plaintiffs allege that, whether "intentional or not," the Forest Service's deferral of "full suppression strategies" is what "directly caused" the fire "to escap[e]" the forest and to spread to their property. *Id.* (emphasis omitted).

What is notable is what the amended complaint does *not* allege. The amended complaint does *not* specify: (1) the "full suppression strategies" Plaintiffs believe the government should have pursued; (2) what actions the Forest Service took to combat the fire; or (3) how those actions caused the fire to spread to Plaintiffs' property, if at all.

In response to the government's motion to dismiss, Plaintiffs attached a copy of the Forest Service's Incident Action Plans for relevant dates, Pl. Resp. at 8–19 (the September 5, 2020, report, and related notices), 20–25 (the September 6, 2020, report), 26–38 (the September 7, 2020, report), 39–45 (the September 8, 2020, report). In these documents, Plaintiffs marked various sections, including highlighting an operation to "[c]onduct tactical burns" and other references to "burnout operations" (collectively referred to below as "tactical burns"). Pl. Resp. at 12–13, 15, 18–19, 25, 33–34, 37–38. The reports also include fire behavior forecasts that describe substantial risks of rapid fire movement. Pl. Resp. at 10–11, 22–23, 28–29, 41–42. But the amended complaint contains no factual allegations tying any of the information reported in the Incident Action Plans to the Plaintiffs' alleged property damage.[3]

---

not its legal conclusions — are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the *factual* allegations in the complaint as true[.]" (emphasis added)).

[3] As explained *infra*, Plaintiffs' response to the motion to dismiss — even if viewed as supplementing the amended complaint — suffers from the same deficiencies as the amended complaint: Plaintiffs never attempt to tie, with factual allegations, any government actions (*i.e.*, even those in the Incident Action Plans) to Plaintiffs' alleged damage. Indeed, Plaintiffs admit

Plaintiffs claim the fire destroyed $273,670 worth of lumber on the land and separately destroyed $165,000 of personal property. Am. Compl. at 5. They also assert that the fire damage reduced the real property's market value by $2,000,000 based on their research and efforts to sell the property. *Id.* Plaintiffs seek $2,438,670 in monetary damages (representing the sum of the alleged damage to timber, personal property, and real property). *Id.*

## III.   JURISDICTION

Pursuant to the Tucker Act, this Court's primary jurisdictional statute, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution, . . . any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act thus "provides the Court of Federal Claims with jurisdiction over [Fifth Amendment] takings claims brought against the United States." *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1359 (Fed. Cir. 2013) (quoting *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008)). The Court finds that it has jurisdiction to consider Plaintiffs' complaint.

## IV.   STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), the Court views the facts in the light most favorable to the plaintiff and accepts as true all factual allegations — but not conclusory legal assertions — contained in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *see also Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). Those facts must yield a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

The Johnsons are proceeding *pro se*, and this Court generally holds a *pro se* plaintiff's pleadings to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Yet a *pro se*

---

they "can not [sic] allege any affirmative act without sounding in tort other than [that the Forest Service] chose to manage the fire and it escaped their jurisdiction." Pl. Resp. at 2.

4

plaintiff's "obligation 'to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions.'" *Arunachalam v. Apple, Inc.*, 806 F. App'x 977, 981 (Fed. Cir. 2020) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations in original) (internal quotation marks omitted); *see also, e.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018). Thus, to survive the government's motion to dismiss, the Johnsons' amended complaint must allege facts that, when assumed to be true, constitute a viable takings claim for compensation pursuant to the Fifth Amendment of the United States Constitution.

## V.  DISCUSSION

### A. Plaintiffs Must Allege Facts Demonstrating an Affirmative Government Act and Causation to State a Takings Claim

In general, plaintiffs seeking compensation for property damage caused by the government conceivably may proceed under either a tort or takings claim theory of liability.[4] Tort claims may be brought only in district court pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b)(1). This Court has jurisdiction to decide certain monetary claims against the government, including contract claims and claims for compensation pursuant to the Fifth Amendment, but not cases "sounding in tort." 28 U.S.C. § 1491(a)(1); *see also, e.g.*, *Jackson v. United States*, 162 Fed. Cl. 282, 302 (2022) ("The [FTCA] states that 'the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States' sounding in tort." (alteration in original) (quoting 28 U.S.C. § 1346(b)(1))).[5]

Where a plaintiff seeks compensation for property damage allegedly arising from flooding or fire — whether via a tort or takings claim — obtaining relief is not simple given the nature of the facts a plaintiff must plead (and then prove) to support each theory

---

[4] Plaintiffs contend that the nature and history of their land grant constitutes a contract obligating the government to take no action that infringes on Plaintiffs' property rights in this land. Am. Compl. at 2–3. To assert the existence of a contract with the government, however, a plaintiff must allege facts demonstrating a "mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997); *see D&N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003). Plaintiffs' alleged land grant "to have and to hold . . . forever" certain land, Am. Compl. at 7–8 (emphasis omitted), does not equate to a contract — certainly not one obligating the government to indemnify Plaintiffs for damages resulting from fires that begin in the adjacent national forest. The Court therefore focuses its analysis on Plaintiffs' takings claim.

[5] *See also* 28 U.S.C. §§ 2671-80 (Tort Claims Procedure).

5

of recovery.[6]  For example, plaintiffs attempting to recover damages in tort have often failed to do so because of the FTCA's discretionary-function exception.[7]  *St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1362 & n.6 (Fed. Cir. 2018) (discussing *In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 449–454 (5th Cir. 2012), and noting that the Fifth Circuit held that "the government was immune from liability under the discretionary-function exception of the FTCA"); *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) (applying the discretionary-function exception in part because government standards and procedures "do not tell firefighters how to fight the fire"); *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222–23 (10th Cir. 2016) (concluding that government procedures did not tell the Forest Service how to suppress fires and the discretionary-function exception protected decisions like firefighting strategy).[8]

---

[6] Such complexity is precisely why this Court proposed to refer Plaintiffs to the pro bono program. *See* ECF No. 7 ("[P]ursuant to RCFC 9(i), a plaintiff must plead with specificity the property interest alleged to have been taken.  Here, however, Plaintiffs do not meet that pleading burden. While Plaintiffs generally suggest that the U.S. Forest Service's actions in managing the wildfire resulted in damage to their property, Plaintiffs fail to allege with sufficient specificity (1) *what* losses they incurred to their property, and (2) *how* the government is responsible for such losses."); ECF No. 8 (pro bono program referral order).

[7] "[T]he [FTCA] does not authorize suits against officials for exercising discretionary, policymaking functions."  *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1004 (Fed. Cir. 1987) (discussing 28 U.S.C. § 2680(a)); *see also Am. Council of the Blind v. Mnuchin*, 977 F.3d 1, 6 (D.C. Cir. 2020) ("In [FTCA] cases, for example, the 'discretionary function exception' to liability is implicated if the government's action is 'susceptible to policy analysis.'" (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

[8] *See also, e.g.*, *Esquivel v. United States*, 21 F.4th 565, 570, 579 (9th Cir. 2021) (affirming the dismissal of an FTCA claim for the Forest Service's response to a wildfire); *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1167 (11th Cir. 2020) (affirming the dismissal of an FTCA claim that alleged the Forest Service was negligent in handling a controlled burn); *Hardscrabble Ranch, L.L.C.*, 840 F.3d at 1217–18, 1222–23 (affirming summary judgment for the Forest Service on an FTCA claim arising from the Forest Service's "partial [wildfire] suppression strategy" and "controlled burn"); *Woodward Stuckart, LLC v. United States*, 650 F. App'x 380, 381–83 (9th Cir. 2016) (affirming dismissal of an FTCA claim for Forest Service's alleged "use" of a wildfire that "escaped" onto the plaintiffs' land); *Mich. Dep't of Nat. Res. v. United States*, 2012 WL 13028277, at *5–6 (W.D. Mich. May 29, 2012) (dismissing an FTCA claim against the Forest Service for a prescribed burn); *Green v. United States*, 630 F.3d 1245, 1247–48, 1252 (9th Cir. 2011) (reversing dismissal of an FTCA claim where the Forest Service allegedly failed to warn plaintiffs of a backfire that the Forest Service started); *Juras v. United States*, 2011 WL 13223900, at *5 (D.N.M. Oct. 14, 2011) (granting motion to dismiss an FTCA claim against the Forest Service for its wildfire management); *Backfire 2000 v. United States*, 273 F. App'x 661, 662–63 (9th Cir. 2008) (affirming summary judgment for the Forest Service on an FTCA claim based on backfires the Forest Service started); *Miller v. United States*, 163 F.3d at 597 (affirming summary judgment in favor of the Forest Service after a wildfire "escaped" a national forest).

In this case, Plaintiffs correctly recognize that this Court lacks jurisdiction to hear FTCA claims against the government. ECF No. 15 ¶ 2; *see also* 28 U.S.C. § 1491(a); *Hansen v. United States*, 65 Fed. Cl. 76, 79 (2005) ("[T]his court has jurisdiction over taking claims under the Tucker Act, but not over tort actions."). Thus, Plaintiffs seek just compensation pursuant to the Fifth Amendment of the United States Constitution and the Tucker Act, 28 U.S.C. § 1491(a). Am. Compl. at 1; ECF No. 15 ¶ 2. The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. A Fifth Amendment takings claim for just compensation is also known as one for an "inverse condemnation." *See Cary v. United States*, 552 F.3d 1373, 1375–76 (Fed. Cir. 2009); *Moden v. United States,* 404 F.3d 1335, 1342 (Fed. Cir. 2005) (quoting *United States v. Clarke,* 445 U.S. 253, 257 (1980)); *see also Horne v. Dep't of Agric.*, 576 U.S. 350, 357–61 (2015) (holding the Fifth Amendment's requirement of just compensation for direct appropriations applies to both personal and real property).

Our appellate court, the United States Court of Appeals for the Federal Circuit, has addressed takings arising from fires, floods, and similar damaging events allegedly caused by the government. *See, e.g., Cary*, 552 F.3d at 1376 (property damage from wildfire); *St. Bernard*, 887 F.3d at 1360 (property damage from flooding); *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355–56 (Fed. Cir. 2003) (property damage from flooding); *Moden,* 404 F.3d at 1343 (property damage from environmental contamination).

Similar to difficulties a plaintiff may encounter under the FTCA, takings claims based on floods and fires present their own challenges. In that regard, a basic principle of our circuit's takings jurisprudence is that government inaction cannot give rise to a Fifth Amendment takings claim; rather, the government may be liable for an invasion of property only if the invasion results from an affirmative government act. *See St. Bernard*, 887 F.3d at 1360 (citing cases). In *St. Bernard*, for example, the Federal Circuit reversed the trial court's determination that the government's "failure to maintain or modify" a water navigation channel caused flooding that constituted a temporary taking. 887 F.3d at 1358–59. Instead, the Federal Circuit distinguished between the government's alleged failures, on the one hand, *id.* at 1361–62, and the alleged harms arising from the government's construction and operation of infrastructure, on the other, *id.* at 1362–68. The Federal Circuit specifically concluded that, "[o]n a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government." *Id.* at 1360–62. Accordingly, "[w]hile the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, *it does not state a takings claim.*" *Id.* at 1360 (emphasis added) (first citing *Sanguinetti v. United States*, 264 U.S. 146, 149 (1924); and then citing *Ridge Line, Inc.*, 346 F.3d at 1355–56).[9]

---

[9] *See also Bench Creek Ranch, LLC v. United States*, 855 F. App'x 726, 728 (Fed. Cir. 2021) (applying *St. Bernard* to affirm the dismissal of a takings claim that stemmed from the government's alleged failure to manage wild horses); *Bd. of Supervisors of Issaquena Cnty. v. United States*, 160 Fed. Cl.

*St. Bernard* and other cases illustrate what government actions may support a Fifth Amendment takings claim. In *St. Bernard*, the government's construction and continued operation of a navigation channel were "the sole affirmative acts involved" that might form the basis for a takings claim. 887 F.3d at 1362. Similarly, the Federal Circuit held that a takings claim may be viable where the government's construction caused storm runoff and flooding. *Ridge Line*, 346 F.3d at 1351–55, 1359 (applying *United States v. Dickinson*, 331 U.S. 745 (1947), to consider a government taking of a flowage easement).

More to the point, in *TrinCo Investment Co. v. United States*, 722 F.3d 1375 (Fed. Cir. 2013), the plaintiff alleged that "the Forest Service *intentionally lit fires directly on and adjacent to* TrinCo's properties in order to reduce unburned timber which might fuel the Iron Complex fire" — a series of wildfires in June 2008 that burned within the Shasta-Trinity National Forest. 722 F.3d at 1376–77 (emphasis added). TrinCo sought damages for a taking. *Id.* at 1377. The government had argued that "the intentional lighting of fires by the Forest Service to manage existing wildfires cannot sustain a plausible takings case because the doctrine of necessity absolves the Government from liability for any taking or destruction of property in efforts to fight fires." *Id.* The trial court agreed, granting the government's motion to dismiss, but the Federal Circuit reversed, rejecting "the position that any act undertaken by the Government in connection with fighting a fire is covered by the necessity defense." *Id.* at 1380. Instead, the Federal Circuit concluded that the "necessity defense is just what it says it is: a defense" — one that "has always required a showing of imminent danger." *Id.* The Federal Circuit held that the government's invocation of the necessity defense raised factual questions — "to learn in discovery why the Plaintiff's property had to be sacrificed, as opposed to other property, including other portions of the National Forest itself." *Id.* The Federal Circuit thus implicitly concluded that the government's intentional burning of private property to save government property may constitute a taking. *Id.* at 1378–80 (remanding the case for discovery regarding whether the government had "take[n] a private citizen's property without compensation").

Accordingly, to state a takings claim sufficient to survive an RCFC 12(b)(6) motion to dismiss, plaintiffs must allege *facts* that constitute an affirmative government act — such as the lighting of a fire. But while factual allegations demonstrating an affirmative government act are necessary, they are not sufficient to state a takings claim. Rather, plaintiffs must also allege *facts* that, when assumed to be true, satisfy yet additional conditions for an inverse condemnation. In particular, this Court applies a two-prong test the Federal Circuit adopted in *Ridge Line, Inc. v. United States*, 346 F.3d at 1355–57,

---

300, 303–05 (2022) (holding that the government's alleged "failure to construct" flood mitigation measures could not serve as the premise for a viable takings claim), *appeal docketed*, No. 22-2026 (Fed. Cir. docketed July 15, 2022).

characterized as "[1] causation and [2] appropriation."  *Cary*, 552 F.3d at 1376 (summarizing *Ridge Line*).

For causation, a plaintiff must allege facts showing that "the government intend[ed] to invade a protected property interest or [that] the asserted invasion [was] the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action."  *Cary*, 552 F.3d at 1376 (alterations in original) (quoting *Ridge Line*, 346 F.3d at 1355).  The Federal Circuit understands "direct, natural, or probable" in the context of *Ridge Line* causation to mean that the alleged property loss was "foreseeable from the authorized government act."  *Moden*, 404 F.3d at 1343 (citing cases).  To demonstrate an appropriation sufficient to state a claim, a plaintiff's complaint must allege that, "[e]ven where the effects of the government action are predictable, . . . an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time."  *Ridge Line*, 346 F.3d at 1356.  The appropriation prong considers:  (1) whether the alleged taking served a public interest; and (2) whether the government's interference with property rights was so substantial and frequent as to constitute a taking.  *See Cary*, 552 F.3d at 1380–81 (applying *Ridge Line*, 346 F.3d at 1357).

Applying *Ridge Line* and *Moden*, the Federal Circuit in *Cary* considered the government's takings liability for fire suppression policies.[10]  552 F.3d at 1375–77.  In *Cary*, the plaintiffs alleged that:  (1) the government's fire suppression policies allowed a buildup of flammable vegetation; and (2) the vegetation buildup caused a property-damaging wildfire.  *Id.*  In response to the government's motion for judgment on the pleadings, the trial court entered judgment for the government, dismissing the case, *Cary v. United States*, 79 Fed. Cl. 145, 148 (2007).  *See* 552 F.3d at 1376.  The Federal Circuit affirmed: the plaintiffs needed to, but did not, allege facts that "plausibly show" that their injury was "the likely, foreseeable result of" the government's actions.  *Id.* at 1377–80.  In the series of events the plaintiffs alleged, something other than the government's firefighting started the wildfire that damaged the plaintiffs' property.  *Id.* at 1379.  Fire suppression may have increased the risks of subsequent wildfires, but a specific wildfire and the resulting destruction were not likely (*i.e.*, foreseeable) consequences of the fire suppression policy at issue.  *Id.* at 1377–79 (citing *Moden*, 404 F.3d at 1343).  "Taking a calculated risk, or even increasing a risk of a detrimental result, does not equate to making the detrimental result direct, natural, or probable."  552 F.3d at 1378.  A takings claim

---

[10] The Federal Circuit in *Cary* "[a]ccept[ed] *arguendo* that a policy is an action."  552 F.3d at 1377 & n.* ("The 'policy' is not one authorized action but a set of intertwined, authorized actions.  [Plaintiffs] cherry-pick parts of the Forest Service policy which they argue have increased the risk of wildfire[.]").

requires a continuous "chain of causation" that connects an alleged government action to an alleged injury, and the plaintiffs' allegations could not avoid breaks in such a chain. *Id.* at 1379–80.  According to the Federal Circuit, "[t]he key difference between the flood cases and the instant controversy [in *Cary*] is that the policy of suppressing fires did not set the [fire] in motion as the dams did the floods."  552 F.3d at 1378.

Thus, this Court must assess whether Plaintiffs have sufficiently alleged facts demonstrating:  (1) an affirmative government act for which Plaintiffs seek to hold the government liable; and (2) the causal connection between the government's act and Plaintiffs' damages, consistent with *Ridge Line*, *Moden*, and *Cary*.[11]

### B. Plaintiffs Fail to State a Takings Claim Because They Do Not Allege Facts Demonstrating an Affirmative Government Act or Causation

The government argues that the Johnsons were required to, but did not, allege facts demonstrating that an affirmative government act caused their property damage. Def. Mot. at 4–7; Def. Rep. at 1–2.  This Court agrees.

Under the most fair and plain reading of the amended complaint, Plaintiffs assert liability based on inaction — *i.e.*, the government's failure to protect Plaintiffs' property. Am. Compl. at 3 (alleging that the "US Forest Service Fire Managers deferred full suppression strategies in their jurisdiction" and that "[the fire] escaped their jurisdiction" (emphasis omitted)).  Aside from generally criticizing the government's firefighting strategy, Plaintiffs simply do not allege specific *affirmative* government acts necessary to support a takings claim.[12]

---

[11] The government's motion does not address the appropriation prong, and thus this Court does not consider that issue further.

[12] Plaintiffs allege that the August Complex Fire is the fire that damaged their property.  Am. Compl. at 3 ("The US Forest Service Fire Managers deliberately acted to engage in the August Complex Fire using Management Strategies . . . .  The US Forest Service August Complex Managed Fire escaped . . . and trespassed on the Plaintiffs' private inholding as a direct result[.]" (emphasis omitted)).  Plaintiffs do not allege the government started the August Complex Fire. Indeed, that fire was ignited by natural causes.  In that regard, the Court takes judicial notice that, as a matter of public record, the August Complex Fire was caused by lightning.  *See August Complex Restoration*, United States Department of Agriculture, https://www.fs.usda.gov/detail /mendocino/home/?cid=FSEPRD860382 (last visited Nov. 8, 2022) ("The fires within the August Complex were ignited by lightning[.]").  This is a fact that Plaintiffs appear to admit.  *See* Pl. Resp. at 2 ("the Natural Lightning Fire").

Plaintiffs attempt to transmogrify the Forest Service's inaction into an affirmative act. Am. Compl. at 3. ("The US Forest Service Fire Managers deliberately acted to engage in the . . . fire[.]"); Pl. Resp. at 3 ("The Defendant made a choice to manage fire in their jurisdiction [as] opposed to full suppression of the fire. That affirmative act on [the] part of The United States led to the taking of the Plaintiff's property and [the] direct result of the damages[.]"). This attempted reframing does not change that the gravamen of Plaintiffs' amended complaint is that the government failed to stop the fire, which, in turn, caused the damage to Plaintiffs' property. Simply labeling inaction as an affirmative act does not save an otherwise deficient takings claim. *See, e.g.*, *Kinney v. United States*, 161 Fed. Cl. 644, 649 (2022) ("The fact that plaintiff labels the cause of action as a takings claim, and includes, among his other allegations, a reference to taking property without just compensation, does not transform his claim for monetary damages arising from . . . intentional torts, into a Fifth Amendment takings claim." (internal quotes omitted) (alteration in original)); *Ivaldy v. United States*, 655 F. App'x 813, 815 (Fed. Cir. 2016) (affirming a lack of jurisdiction on the basis of the "true nature" of the plaintiff's claim when the plaintiff "attempts to couch his allegations in terms of a Fifth Amendment taking").

The only government actions to which Plaintiffs (vaguely) point are tactical burns the government allegedly initiated as part of its firefighting strategy. In that regard, Plaintiffs provided the Court with numerous documents, including government reports, as attachments to their response opposing the government's motion to dismiss. Pl. Resp. at 5–47. In those government reports, Plaintiffs highlighted various references to tactical burns. *See* Pl. Resp. at 12, 13, 15, 18, 19, 25, 33, 34, 37, 38.

To the extent that Plaintiffs reference tactical burns as part of their overall critique of the government's fire control strategy, the government's failure to engage in alternative or additional fire control measures does not amount to an affirmative act sufficient to satisfy *St. Bernard*. *See* 887 F.3d at 1362 (government's failure to maintain and modify storm infrastructure cannot be the basis for a takings claim). Indeed, Plaintiffs' general criticism of the government's response to the forest fire resembles the failure to maintain or modify flood infrastructure at issue in *St. Bernard*, 887 F.3d at 1360–62, as well as the alleged failure to mitigate flooding at issue in *Board of Supervisors of Issaquena County*, 160 Fed. Cl. at 304–06.

Moreover, even assuming that Plaintiffs' amended complaint could be read as alleging some affirmative government act in the form of tactical burns — *i.e.*, acts similar to those at issue in *TrinCo Investment Co.* — the amended complaint alleges no nonconclusory facts that meet the Federal Circuit's causation standard as articulated in *Ridge Line*, *Moden*, and *Cary*. Plaintiffs make no effort to connect the tactical burns — *i.e.*,

11

with factual allegations demonstrating causation — to Plaintiffs' property damage. Plaintiffs simply do not allege that the tactical burns caused or otherwise contributed to the alleged damage to their property. Indeed, with regard to causation, the Johnsons' case is far closer to *Cary* — affirming judgment on the pleadings for the government — than to *TrinCo*, which reversed a complaint's dismissal. And, unlike in *TrinCo*, the Plaintiffs here never allege facts — nonconclusory or otherwise — demonstrating, for example, that their land would not have been damaged but for the government's alleged action. *See TrinCo Inv. Co.*, 722 F.3d at 1377 ("TrinCo's complaint alleges that the [wildfire] would not have burned any of its land.").[13]

The bottom line is that Plaintiffs' amended complaint alleges no facts demonstrating causation, including how, if at all, any of the government's tactical burns mentioned in the referenced attachments impacted the fire's spread to Plaintiffs' property. Plaintiffs allege no facts demonstrating that any government action had the "direct, natural, or probable result" of harming Plaintiffs' property. *See Cary*, 552 F.3d at 1379–80 (rejecting a takings claim resulting from a wildfire because the plaintiff had not alleged the damage was a direct, natural, or probable outcome of the government's actions). Even if the documented fire behavior forecasts suggested a high risk of fire movement, Pl. Resp. at 10–11, 22–23, 28–29, 41–42, the amended complaint does not allege facts showing how any of the government's actions, in the context of that risk, rendered damage to Plaintiffs' property a "likely result." *Cary*, 552 F.3d at 1377 ("*Moden* clarified the meaning of 'direct, natural, or probable result' to mean that the injury must be the likely result of the act, not that the act was the likely cause of the injury, the latter allowing for incidental injuries resulting from a true cause-in-fact to be considered a taking. . . . Therefore, to survive judgment on the pleadings, the landowners must plausibly show that the consumption of their property by fire was the likely, foreseeable result of Forest Service action." (quoting *Moden*, 404 F.3d at 1343)).

The fact that the government may have initiated tactical burns somewhere is plainly insufficient. Indeed, the amended complaint all but admits that the timing and extent of Plaintiffs' property damage might have been the same regardless of the tactical burns because the damage occurred as the result of the government's inaction (and not the tactical burns). *See* Am. Compl. at 3 (alleging that the Incident Action Plans showed the Forest Service "deferred full suppression" and thereby caused the fire to "escape[]" the forest, but not mentioning tactical burns (emphasis omitted)). Again, to the extent

---

[13] The Court emphasizes that it reaches the causation issue only under a very generous reading of the Plaintiffs' vague references to tactical burns contained in the various attachments Plaintiffs filed with the Court. That is, even if such documentation serves as factual allegations demonstrating a government act, Plaintiffs must still allege *facts* that satisfy the causation standard. The amended complaint, however, fails to do so.

Plaintiffs allege that the government's failure to act allowed the fire to spread to Plaintiffs' property, that would mean that government inaction, and not tactical burns, were the cause of Plaintiffs' damage. The Court emphasizes once again that its discussion of causation is necessary only under the most generous reading of the amended complaint and the Plaintiffs' response to the government's motion to dismiss (including Plaintiffs' attachments).

In granting the government's motion to dismiss in this case, this Court does not demand that plaintiffs — *pro se* or otherwise — use magic words in a complaint, but neither may the Court redraft a complaint to state a viable takings claim when basic factual elements are omitted. Here, Plaintiffs have not provided the Court with factual allegations to identify tactical burns or anything else as constituting (1) an affirmative government act with (2) a causal link to Plaintiffs' injury. Plaintiffs therefore fail to state a claim pursuant to RCFC 12(b)(6). *See Twombly*, 550 U.S. at 570 (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").[14]

## VI. CONCLUSION

For the reasons explained above, the Court hereby **GRANTS** the Defendant's motion to dismiss. The Clerk shall enter **JUDGMENT** for the government, dismissing Plaintiffs' amended complaint.

**IT IS SO ORDERED.**

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[14] On January 30, 2023, as the Court was preparing to issue this decision, Plaintiffs filed a motion for summary judgment that reiterated the core allegations of Plaintiffs' amended complaint. ECF No. 18. The Court has reviewed and considered Plaintiffs' motion for summary judgment, but it contains no new arguments or facts and, if anything, confirms the Court's reading of the amended complaint. *See id.* at 2–3. Given the Court's dismissal of this case, the Court will deny the motion for summary judgment as moot.